IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

EUGENE CECIL BURNETT,

    Defendant.

No. CR11-0085

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Parties' Plea Agreement* . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *David Criswell's Testimony* . . . . . . . . . . . . . . . . . . . 4
    C.   *Eugene Burnett's Proffer* . . . . . . . . . . . . . . . . . . . . . 5
    D.   *Defendant's Capture in Iowa* . . . . . . . . . . . . . . . . . . 7
    E.   *Defendant's Witnesses* . . . . . . . . . . . . . . . . . . . . . . 8

IV.  *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 8th day of August, 2011, this matter came on for hearing on the Government's Motion for Hearing to Determine Property Subject to Preliminary Order of Forfeiture (docket number 52) filed on June 21, 2011. The Government was represented by Assistant United States Attorney Martin J. McLaughlin. Defendant Eugene Cecil Burnett appeared in court and was represented by his attorney, Michael K. Lahammer.

## II. PROCEDURAL HISTORY

On April 20, 2011, Defendant Eugene Cecil Burnett was charged by Indictment (docket number 3) with one count of conspiring to manufacture and attempting to manufacture 1,000 or more marijuana plants. Included in the indictment was a forfeiture allegation, advising Defendant that the Government was seeking forfeiture of

    a.    Defendant, EUGENE CECIL BURNETT's personal residence, a 257 acre farm (Mt. Pisgah) in Monticello, Kentucky, []; and

    b.    $264,000 as proceeds from the offense listed in Count 1 of this indictment.

On June 6, 2011, Defendant tendered a plea of guilty to Count 1 of the indictment. Defendant's guilty plea was accepted by the district court on June 8, 2011. Sentencing has not yet been scheduled.

On June 21, 2011, the Government filed a motion for a hearing, pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 32.2(b)(1)(B), for the purpose of establishing a preliminary order of forfeiture. The motion was referred to the undersigned magistrate judge for a report and recommendation. The motion for hearing was granted, and the hearing was initially scheduled for July 1, 2011. At Defendant's request, the hearing was rescheduled for August 8.

## III. RELEVANT FACTS

The relevant facts are established by the plea agreement entered into between the parties (Government's Exhibit 1), as supplemented by testimony offered at the hearing.[1]

### A. Parties' Plea Agreement

In the "stipulation of facts" found in the plea agreement, Defendant admits that the following facts are true:

---

[1] "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." FED. R. CRIM. P. 32.2(b)(1)(B).

A.  During 2008, Eugene Burnett, Kelly Burnett, David Criswell, and others manufactured and attempted to manufacture 100 or more marijuana plants, a Schedule I controlled substance.

B.  On June 23, 2008, a farmer observed several individuals and a brown truck parked in the farmer's field. When the farmer went to investigate, Eugene Burnett drove off with Kelly Burnett in the truck bed leaving behind at least Criswell and possibly another co-conspirator. Officers later seized <u>465 marijuana plants</u> from the ditch where the truck had been parked. An Iowa County sheriff's deputy stopped the brown truck, Iowa license plate number 604 PCQ, on Interstate 80 near mile marker 215. The driver of the truck, Eugene Burnett, fled on foot, leaving his son Kelly Burnett behind in the truck bed with five trays containing a total of <u>506 marijuana plants</u>. The marijuana plants were in trays identical to the trays found in the ditch where the truck had been parked shortly before the traffic stop.

C.  David Criswell and Greg Burnett rented room 300 at the Super 8 Motel at Little Amana on Interstate 80, exit 225. Criswell and Burnett abandoned this room after being spotted in the farmer's field. Among the items abandoned by Criswell and Greg Burnett were three bags of luggage, a cell phone, $1,000 in cash, the U-Haul rental agreement, Burnett's wedding ring, and a green notepad. The green notepad had directions to locations where marijuana was to be planted including a farm field near RR Avenue and 245th Street in Iowa County.

D.  On October 14, 2008, officers found 29 trays containing a total of <u>965 marijuana plants</u> in a farm field near RR Avenue and 245th Street in Iowa County. The marijuana plants were in trays identical to the trays found in brown Ford truck and the ditch where the truck had been parked shortly before the traffic stop. Directions to this field were found in a green notepad

3

found in Criswell's and Greg Burnett's motel room on June 23, 2008.

*See* Letter from Ms. Sleister to Mr. Lahammer, dated May 25, 2011, at 3-4 (Government's Exhibit 1). Thus, Defendant admits that he conspired with Kelly Burnett (his son and a co-defendant in this case), David Criswell, and "others" to manufacture and attempt to manufacture 100 or more marijuana plants.

### B. *David Criswell's Testimony*

At the time of hearing, David Criswell provided his version of the illegal operation. According to Criswell, he has known Defendant for several years, both coming from the small town of Monticello, Kentucky. Criswell testified that the marijuana seized in Iowa in June 2008 was "started" in Defendant's garage in Monticello. The marijuana was grown in trays for five or six weeks and then loaded in a U-Haul to be transported to Iowa and replanted. According to Criswell, he and Defendant had grown marijuana in the same room in Defendant's garage in 2006 and 2007.

Criswell described the process in some detail: The seeds were planted in Styrofoam trays, with two seeds placed in each square.[2] According to Criswell, the trays were "already there," with some trays used from year-to-year. Criswell provided some of the seeds and Defendant provided some of the seeds. Criswell would go to Defendant's garage weekly to water the plants. After the plants became 10 to 12 inches tall, they were ready for transplant.

In June 2008, Criswell rented a U-Haul trailer and helped Defendant load the trays into the trailer. A shelf was constructed in the U-Haul trailer to permit the plants to be double-stacked. Criswell estimated that the trailer contained 34 to 36 trays, with each tray containing about 100 plants, "give or take a few."

---

[2] One of the trays is depicted in a photograph introduced as Government's Exhibit 8.

When they left Monticello, Kentucky, the U-Haul was being pulled by Criswell's Ford truck. Defendant followed in his red Ford truck.[3] Accompanying them were Defendant's two sons. When the parties reached Indiana, however, Criswell's truck broke down. The alternator "went out" and could not be immediately repaired. According to Criswell, Defendant observed that the plants would get too hot and die if the plants were left in the U-Haul too long. The parties then decided to hook the U-Haul to Defendant's truck and continue on. Criswell rode in the bed of Defendant's pickup truck, which was covered by a "topper." Defendant and his two sons rode in the cab of the pickup truck.

The parties then proceeded to Illinois, where they had left a third truck purchased in Iowa during the previous year by Criswell, Defendant, and Defendant's son Duane (also known as Greg). Criswell testified that they parked the U-Haul containing the marijuana plants nearby, scouted the area, and considered planting the marijuana plants in corn fields in Illinois. According to Criswell, the parties were confronted by police as they were "coming out of a little side road trying to find a place to put the plants." Defendant told the police that they "had to use the restroom; that's why we had stopped there." After that encounter, Defendant and Criswell decided that it was best to continue on to Iowa.

### C. Eugene Burnett's Proffer

On June 8, 2009, Defendant Eugene Burnett proffered a statement to law enforcement authorities. An audio tape of that interview was introduced as Defendant's Exhibit T.

Burnett told authorities that he and Criswell had been to Iowa three times in 2008, prior to being arrested on June 23, 2008. On the initial trips, Defendant and Criswell drove around looking for places to plant marijuana. On a trip approximately three to three and one-half weeks prior to June 23, they allegedly planted seeds in the growing trays and left them in "low lying areas." According to Defendant, the trays were brought from Kentucky, together with soil purchased from Wal-Mart. Defendant testified that Criswell

---

[3] Defendant's truck and the U-Haul trailer are depicted in Government's Exhibit 2.

provided the marijuana seeds. Plastic was placed on the ground, with the trays then placed in a few inches of standing water.

Defendant told authorities that he and Criswell, together with Defendant's two sons, left Monticello, Kentucky, a day or two prior to June 23, 2008, heading for Iowa. Criswell was driving his pickup truck and pulling a U-Haul. Defendant was driving his red pickup truck with a topper. According to Defendant, the U-Haul was empty, while his pickup contained tools necessary to transplant the marijuana plants which were then growing in trays in Iowa.

When the parties got close to Indianapolis, Criswell's truck broke down. The parties decided that they would proceed to Iowa in Defendant's truck, with Defendant pulling the U-Haul. It was necessary to take the hitch off Criswell's truck and place it on Defendant's truck. Defendant described a conversation which he had with Criswell at that time:

> I told him when I raised the door up on that U-Haul, I said as hot as it is in there, I said we can't let them plants – we can't put them in and let it sit there for three days, [two or three unintelligible words] it's going to cook them; just leave it hooked to your truck and take it back; and he said take it on, so that's what we done.

Audio proffer statement of Eugene Burnett (Defendant's Exhibit T) at approximately 15:00.

Defendant, Criswell, and Defendant's two sons then proceeded to a truck stop near Galesburg or Knoxville, Illinois. Defendant told authorities that on one of the previous trips to Iowa in 2008, Defendant took a brown 1979 Ford pickup truck which he had stored in Iowa and drove it to the truck stop in Illinois and left it there. On the night of June 22, 2008, the parties stayed in a motel near the truck stop. While Defendant's two sons were eating, Defendant and Criswell drove around and looked for places to plant the marijuana. According to Defendant, Criswell told him that the corn was not big enough around there. While scouting for appropriate growing areas, Defendant and Criswell were apparently confronted by local law enforcement authorities, but were not detained.

6

On the next morning (June 23, 2008), the parties continued to Iowa using both vehicles: Defendant's red Ford pickup truck and Defendant's 1979 brown Ford pickup truck. The parties checked into a motel near the Williamsburg, Iowa, exit on Interstate 80. Defendant, Criswell, and one of Defendant's sons (Kelly) then went out driving around. They returned to the motel and Kelly fell asleep. According to Defendant, he and Criswell then took the U-Haul and went out and retrieved the trays from where they had been placed several weeks earlier.

While Defendant's proffer is somewhat confusing, he apparently claims that he and Criswell then unloaded the trays in other areas, where they intended to replant them. Defendant and Criswell then apparently returned to the motel, where they dropped off the U-Haul and picked up Defendant's son, Kelly. The three of them then went to the area where they were spotted by a local farmer. There were ten trays of marijuana plants in the back of the brown pickup truck. According to Defendant, they intended to "set 'em out." When they got to the site, Kelly was in the back of the truck handing the trays to Defendant, who was standing nearby. Defendant then handed the trays to Criswell, who was in the weeds. Defendant told authorities that he heard "gravel popping" and a farmer "jerked his lights on" and was right behind them. Defendant jumped in the pickup truck and took off, with Kelly in the back and Criswell left behind.

Defendant told authorities that "it was all David's idea," and denied being involved in the manufacture of marijuana prior to 2008. Defendant admitted accompanying Criswell to Iowa several times in 2006 and again in 2007. According to Defendant, the first trip was to look for farm machinery. Defendant told authorities in his proffer that the subsequent trips to Iowa were "whore runs."[4] Defendant provided no explanation as to why he purchased the brown pickup truck in 2007 and stored it in Iowa.

---

[4] Defendant told authorities that "we would leave home with one thing in mind . . . it was whores."

7

### D. Defendant's Capture in Iowa

Jesse Whitmer, a special agent with the Iowa Division of Narcotics enforcement, testified regarding Defendant's capture in Iowa. On the night of June 23, 2008, a farmer in Iowa County observed a suspicious vehicle near his farm. The farmer contacted the Iowa County Sheriff's Office, which stopped the vehicle. Defendant, who was driving the vehicle, fled on foot. Defendant's son Kelly, a co-Defendant in this case, was found in the bed of the pickup truck, which was enclosed by a topper.[5] Defendant was arrested a short time later at a convenience store.

### E. Defendant's Witnesses

At the time of hearing, Defendant called a number of his friends and relatives from Monticello to testify on his behalf. The witnesses testified generally that they had been in the garage stall which Criswell claims was used to start the marijuana plants in late May and June, 2008, and they had not seen any indication that it was used for this purpose. Photographs of the garage stall show that it is somewhat "finished," with a refrigerator, microwave, and restroom.

Carter Burnett, Defendant's brother, testified that their father died on June 7, 2008. According to Carter, a dinner was held in the garage during that time and there was no sign of a marijuana growing operation. All of the witnesses testified that they were "surprised" by Defendant's involvement in the manufacture of marijuana.

Among the witnesses testifying on Defendant's behalf was Bruce Dobbs. Dobbs' step-daughter is married to Defendant's son, Duane (also known as Greg). Duane was with Defendant, Criswell, and Kelly on the trip to Iowa which resulted in Defendant's arrest on June 23, 2008. Duane was not at the scene when the plants were being unloaded,

---

[5] Five trays of marijuana plants were found in the back of the truck, with approximately 500 plants. Officers then went back to the location where the vehicle had been seen by the farmer, and an additional five trays were found, containing approximately 465 plants. Four months later, in October 2008, authorities found 29 additional trays located in a field. A majority of the plants had died, but there were apparently 877 plants remaining.

however, and Defendant claimed in his proffer that Duane had no knowledge of the illegal activities. After Defendant and Kelly were arrested, Dobbs drove to Iowa to pick up Criswell and Duane.[6] Displaying an astounding lack of curiosity, Dobbs testified that he did not ask Criswell or his son-in-law what they were doing in Iowa and, incredibly, did not know that Defendant and Kelly had been arrested. The Court did not find Dobbs to be a credible witness.

## IV. DISCUSSION

The law applicable to this issue is undisputed. Forfeiture judgments in criminal proceedings brought under the Controlled Substances Act are governed by 21 U.S.C. § 853. Among other things, the statute provides that following a conviction on a charge of manufacturing a controlled substance, "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense" shall be forfeited. 21 U.S.C. § 853(a)(2). The term "property" includes real property. 21 U.S.C. § 853(b)(1). Thus, if Defendant's farm near Monticello, Kentucky, was used to facilitate the manufacture of marijuana, it is subject to forfeiture.

The fighting issue here is a factual one. David Criswell testified that the marijuana seized by authorities in Iowa County was "started" in Defendant's garage and transported to Iowa to be replanted. Defendant asserts, through his preindictment proffer to authorities, that the marijuana was started with seeds planted in growing trays and left in low-lying fields in Iowa. Either Criswell or Defendant is lying. For the reasons set forth below, I believe that Criswell's version of the events is more credible.

First, Criswell testified that the U-Haul was rented in Kentucky to haul the marijuana plants to Iowa. Defendant claims that the U-Haul was empty when it was pulled to Iowa, and used only for a short period of time to move marijuana plants from one location to another. That makes no sense. The parties had two pickups at their disposal in Iowa and, if Criswell's pickup had not unexpectedly broken down, they would have had

---

[6] Initially, Dobbs testified that he was called by Criswell, but later testified that he was called by Duane.

access to a third truck. The parties were, in fact, using one of the pickup trucks to transport marijuana when they were spotted by a local farmer. *If* the U-Haul was *not* used to haul the marijuana plants from Kentucky to Iowa, then it had no purpose at all.

Second, Criswell testified that when his truck broke down in Indiana and could not be immediately repaired, Defendant expressed concern that the marijuana plants would get too hot and die. During the proffer given to law enforcement authorities, Defendant made an almost identical statement. That is, Defendant admits that when they were in Indiana, he "raised the door up on that U-Haul," and said "we can't let them plants – we can't put them in and let it sit there for three days." Defendant now apparently claims that his comments were intended to apply to after the plants were loaded in the U-Haul in Iowa. That makes no sense. Under Defendant's alleged scheme, the plants would not have been sitting in the U-Haul in Iowa for three days. They would only be in the U-Haul for a few hours. While it was going to take several days to repair Criswell's truck in Indiana, there was no reason to believe that the plants would be stuck in the U-Haul for a long period of time in Iowa. The only logical explanation for Defendant's comment is that the plants were in the back of the U-Haul when Defendant opened the door and observed that they could not let them sit for three days (while Criswell's truck was being repaired).

Third, Defendant admits that when they stopped for the night in Illinois, he and Criswell scouted out the surrounding area to find suitable places to replant the marijuana. It must be recalled that Defendant had stashed his 1979 brown pickup truck at that location on an earlier trip to Iowa. Why would the parties have been looking for places to replant the marijuana, and why did Defendant leave his old pickup truck there, unless the marijuana plants were in the U-Haul and ready for transplant? Under Defendant's version of the events, if they had found a suitable place to plant the marijuana (and had not encountered local law enforcement authorities), then it would have been necessary to drive to Iowa to retrieve the plants and bring them back to Illinois for replanting. Again, it makes no sense.

Fourth, the condition of the plants seized on the night of June 23, 2008 belies Defendant's claim that they had been sitting in standing water in a low-lying area during the prior three and one-half weeks. Government's Exhibits 5, 6, and 7 show the five trays of marijuana in the back of the brown pickup truck. Government's Exhibits 9, 10, and 11 show all of the marijuana after it was placed in a conference room at the law enforcement center. All of the plants are in excellent condition. In addition, the growing trays, which appear to be wrapped in duct tape, are in pristine condition. The condition of the marijuana plants and the growing trays is consistent with marijuana grown in a garage under controlled conditions and transported in a U-Haul, and is inconsistent with trays of marijuana plants started from seeds and sitting in water in an open area for three and one-half week.

Fifth, Criswell claims that he and Defendant engaged in similar activity in 2006 and 2007. Defendant admits traveling to Iowa with Criswell several times in 2006 and again in 2007. Defendant claims, however, that the first trip was to look at farm machinery and the subsequent trips were to engage prostitutes. Even if one believes that Defendant would travel all the way from Kentucky to Iowa for the purpose of frequenting a strip club and soliciting a prostitute, it does not explain Defendant's purchase of the 1979 brown pickup truck in 2007. Why would Defendant purchase a pickup truck and leave it stored in Iowa, unless it was used as claimed by Criswell? I believe Defendant's claim in his proffer that he was not engaged in similar activity in 2006 and 2007 makes the remaining portion of his proffer less credible.

In summary, Criswell's testimony on this issue makes more sense and is consistent with the physical evidence. Defendant's assertions regarding the purpose for renting the U-Haul, his comments made in Indiana, and his intentions while stopping in Illinois, simply make no sense and are inconsistent with the physical condition of the marijuana plants and the growing trays. I found Criswell to be a credible witness. I believe Defendant's explanation for his multiple trips to Iowa in 2006 and 2007 to be less than credible. For all of these reasons, I believe that the Government has established by a

preponderance of the evidence that Defendant's property in Kentucky was used to facilitate the manufacture of marijuana. *United States v. Hull*, 606 F.3d 524, 527 (8th Cir. 2010) (the preponderance of the evidence standard is used for criminal forfeiture determinations).

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **GRANT** the Government's motion for a preliminary order of forfeiture. The Court should order the forfeiture of Defendant's interest in the property near Monticello, Kentucky.[7]

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 8, 2011.*

DATED this 29th day of August, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[7] The Government concedes that Defendant's wife also has an interest in the property. The extent of Defendant's interest would have to be determined in a subsequent hearing.